KLIKA, APPELLEE AND CROSS-APPELLANT, *v.* INDIANAPOLIS LIFE INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE.

(No. 43547—Decided January 7, 1982.)

*Mr. Gary B. Kabat,* for Annette Klika.

*Mr. Thomas V. Chema,* for Indianapolis Life Insurance Company.

JACKSON, C.J. Defendant, Indianapolis Life Insurance Company, appeals, and plaintiff, Annette Klika, cross-appeals, from the decision of the Court of Common Pleas of Cuyahoga County granting judgment to plaintiff in the amount of $10,004.68, as benefits under a $10,000 whole life insurance policy on the life of Robert Klika, deceased. The salient

facts, as stipulated by the parties, are set forth below.

The policy became effective July 1, 1970. Premiums of $29.11 were payable monthly; the last payment made was for the month of January 1973. As of February 1, 1973, the policy had a cash value of $173.09. The insurance contract contained a provision entitled "Automatic Premium Loan" (APL), which authorized the company to pay premiums from the cash value of the policy. This APL provision states:

"While this provision is operative, if any premium is not otherwise paid, the Company will, on the last day of the grace period, automatically charge as a loan against this policy the unpaid premium, provided such loan, including interest from the due date of the premium to the end of the current policy year, and existing indebtedness shall not exceed the cash value of this policy and of any dividend additions on the date to which premiums would be paid by Automatic Premium Loan. If such available value is not sufficient to permit ·the entire premium due to be so charged, this provision shall not apply and the Options on Lapse of this policy shall apply. If premiums are payable more frequently than annually and if 2 or more consecutive premiums have been paid by Automatic Premium Loan, the Company may change the mode of premium payment to annual if the available value is sufficient to pay an annual premium."

The applicable "Options on Lapse" of the policy are as follows:

"If any premium due while this policy has a cash value is not paid by the end of the grace period, either A or B below shall immediately apply.

"A. If this policy is designated as Standard Class on Page Three, it shall continue as nonparticipating extended term insurance unless within 62 days after the due date of the first premium in default, it is surrendered for its net cash value, or election is made to continue the policy as reduced paid-up participating insurance. The amount of extended term insurance shall be the face amount plus any dividend additions and less any indebtedness. Its period from the due date of the first premium in default shall be such as the net cash value shall provide when applied as a net single premium. * * *"

To summarize the foregoing provisions, upon expiration of the policy grace period (thirty-one days) following nonpayment of a premium, the company must charge the premiums against the cash value of the policy. After two or more consecutive payments out of cash value, the company may, at its option, change the premium to an annual payment basis, "*if the available value is sufficient to pay an annual premium.*" If the available value is not sufficient to pay an annual premium, the policy lapses, and the remainder of the cash value of the policy is applied to purchase extended term insurance. Obviously, the larger the cash value that exists upon lapse, the longer that the extended term insurance will remain in effect.

In the case at bar, premiums were payable on February 1 and March 1, 1973. The thirty-one day grace period expired March 3, 1973. The company, on March 29, 1973, paid the premiums which were due for the months of February and March, pursuant to the APL provision of the insurance contract. Having paid two monthly premiums, the company exercised the option of changing the mode of premium payment from a monthly to an annual basis. It exercised this option on the same date that it paid the monthly premiums.[1]

---

[1] The policy, by its terms, authorizes the company to change the mode of premium payment to an annual basis as soon as two monthly payments have been made under the APL provision; no grace period or waiting period operates to delay the company's right to

At the time that the company changed the mode of premium payment to an annual basis, the cash value of the policy was approximately $135. If the company had simply continued to take monthly payments out of cash value, as it had an option to do, the policy would have lapsed in October 1973, and the remainder of the cash value of the policy (an amount less than $29.11), would have purchased only a few months of extended term insurance.

The appellant insurance company, however, chose not to continue charging premiums on a monthly basis, because of the "relatively extensive accounting" required to compute such premiums, under an APL provision. To reduce its accounting burden, the company deliberately changed the mode of payment to an annual basis, at the first available opportunity. The cash value of the policy, however, as of March 29, 1973, was "not sufficient to permit the entire premium due to be so charged"; under the APL provision, therefore, the policy should have lapsed immediately, and the entire cash value applied to purchase extended term insurance for the face amount of the policy. Instead, the company applied a portion of the cash value to pay a premium for the months of April, May and June 1973; the company thereby extended the whole life policy until the end of the policy year on June 30, 1973. By charging a premium for three months to the end of the policy year, the cash value of the policy was reduced

to $95; at that time, July 1, 1973, the company determined that the policy should lapse because there was insufficient cash value to pay the premium for the period July 1, 1973 to June 30, 1974. By keeping the policy in effect until June 30, 1973, only $95 was available to purchase extended term insurance, effective until October 21, 1976; if the policy had lapsed April 1, 1973, $136 would have been available to purchase extended term insurance, effective until December 30, 1977.

Mr. Klika died December 31, 1976. It was stipulated that all conditions precedent to recovery were complied with by the beneficiary Mrs. Klika, the appellee. The only issue for determination was whether the company correctly applied the cash value under the APL and lapse provisions of the insurance policy, thereby causing the extended term insurance to terminate October 21, 1976, seventy-one days prior to the death of Mr. Klika. The trial court found that the company did not correctly apply those provisions; the court concluded that by changing the form of payment under the APL provision from a monthly to an annual basis, the company caused the policy to lapse April 1, 1973, and extended term coverage was thus available to the insured until December 30, 1977. Accordingly, the court awarded judgment in the amount of $10,004.68, the amount stipulated to by the parties. The insurance company has appealed and has assigned four errors[2] for review.

The four errors assigned by the in-

---

change the mode of payment. The change in mode of payment was neither premature nor untimely.

[2] First assignment of error

"The trial court erred in concluding as a matter of law that the change in the form of premium payments from monthly to annually on March 29, 1973, resulted in the policy being immediately in default such that the extended term benefit applied, where the policy had lapsed on February 1, 1973 for failure to pay the premium and the Automatic Premium

Loan provision was available to pay premiums through the end of the policy year."

Second assignment of error·

"The trial court erred in concluding as a matter of law that the policy holder was not put on notice of a specific non-forfeiture benefit to which he was entitled where the policy contained specific provisions dealing with the calculations of the benefit."

Third assignment of error

"The trial court erred in concluding as a matter of law that an ambiguity with respect to

surance company raise only one issue, *viz.*, whether the trial court's construction of the APL provision, as applied to this case, is against the manifest weight of the evidence.

It is well-settled law in Ohio that where an ambiguity exists in a contract of insurance, the contract will be liberally construed in favor of the insured and strictly construed against the insurer. *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]; *Travelers Indemnity Co.* v. *Reddick* (1974), 37 Ohio St. 2d 119 [66 O.O.2d 259]. Any doubts arising from the language of the policy are to be resolved in favor of the insured. *Security Finance Co.* v. *Aetna Ins. Co.* (1971), 26 Ohio St. 2d 135 [55 O.O.2d 242].

A careful reading of the insurance policy discloses that the APL provision is silent on the question of whether, in shifting from a monthly to an annual mode of payment, the initial "annual" payment will cover a full year or only the remainder of the current policy year. The APL provision in the insurance contract is ambiguous on this point. Resolving this ambiguity in favor of the insured, we find that the trial court correctly concluded that the initial annual payment was to cover a full year, and that the policy therefore lapsed April 1, 1973, not July 1, 1973, as contended by the insurance company. By virtue of the additional cash value of the policy, extended term insurance was in effect on the date of decedent's death. It is the considered opinion of this court that the judgment of the trial court was not against the manifest weight of the evidence. The insurance company's assignments of error are overruled.

Plaintiff, Annette Klika, has cross-appealed, claiming coverage under the $40,000 term rider to the policy, as well as the $10,000 in term coverage awarded to her by the trial court. The cross-appellant contends that the whole life policy and concomitant term rider never lapsed, because cross-appellant was allegedly not notified of such lapse in accordance with the terms of the policy.[3]

The only reference in the policy regarding the duty of the company to notify the owner of the policy of an impending lapse is contained in the paragraph on "cash loans." The last sentence of this paragraph states:

"Whenever the indebtedness [from cash loans] equals or exceeds the cash value of this policy and of any dividend additions, this policy shall be void 31 days after the Company has mailed notice to the last known address of the Owner and of the assignee of record, if any."

There is no question that the foregoing notice provision is inapplicable to a situation where the next premium due under an APL option is greater than the cash value of the policy. First, no such requirement of notice is contained in the APL paragraph. Second, an unpaid premium does not constitute an "indebtedness." Third, under the APL provision, an unpaid premium greater than the cash value of the policy is *not* charged against the cash value; instead, the policy

the non-forfeiture provision resulted in an extension of the non-forfeiture benefit to its maximum conceivable length as of the date of nonpayment of premium."

Fourth assignment of error

"The trial court erred in concluding as a matter of law that plaintiff was entitled to recover a non-forfeiture benefit from defendant as such conclusion is manifestly against the weight of the evidence."

[3] There is no indication in the record that cross-appellant properly raised this issue in the trial court. There is no specific reference to this claim in the complaint, the stipulations of fact, or the trial court's findings of fact and conclusions of law. Likewise, however, there is no indication that this claim was not raised. Because we find no merit to the cross-appeal, we find it unnecessary to resolve the procedural issue regarding whether the cross-appellant's claim was properly preserved for appeal.

immediately lapses. Fourth, under the APL provision, unlike the cash loan provision, the paragraph describing "Options on Lapse" comes into play when the next premium due exceeds the cash value. In contrast, when existing indebtedness from cash loans exceeds cash value, the policy becomes "void."

Furthermore, the insurance company gave adequate notice of the lapse of the policy in a series of letters to the owner of the policy. The assignment of error in the cross-appeal is overruled.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

PRYATEL and CORRIGAN, JJ., concur.

PRYATEL, J., concurring. Where a life insurance policy contains an Automatic Premium Loan (APL) clause whereby the company can elect to change the mode of premium payments from monthly to annual only where there is sufficient cash value remaining to cover the cost of an annual premium, and, notwithstanding this provision, the company invokes the APL clause even when there was insufficient cash value to cover a full annual premium, and where such decision of the company militates against the interests of the policyholder or his beneficiary, the company cannot be heard to complain because the trial court held that the company was bound by the consequences of its own election.

When a company for its own convenience decides to annualize premium payments on the anniversary date of the policy, its decision will not be disturbed unless some resulting prejudice to the policyholder (or his beneficiary) is demonstrated as was done here.

Accordingly, I join in the concurrence.